Lynn JOYCE, Appellant,

v.

CENTRAL SURETY & INSURANCE
CORPORATION, Respondent.

E. W. WHITE, Appellant,

v.

CENTRAL SURETY & INSURANCE
CORPORATION, Respondent.

Nos. 22837, 22838.

Kansas City Court of Appeals.

Missouri.

Jan. 12, 1959.

Gibson Langsdale, Kansas City, for appellants.

Melvin J. Spencer, Kansas City, Watson, Ess, Marshall & Enggas, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

The above appeals were consolidated by order of this court. Plaintiffs' petitions pray for declaratory judgments determining the rights, status and obligations of defendant insurance company under a policy of liability insurance issued by it to one Oscar Rieger. These petitions further specifically pray that defendant company be ordered to pay to plaintiff Lynn Joyce the sum of $250, and to plaintiff E. W. White the sum of $950, together with costs and interest thereon since October 17, 1955, upon which date plaintiffs allege they secured separate judgments for like amounts against the said Oscar Rieger, defendant company's insured. Some evidence was heard and considered on uncontroverted facts. The trial court then sustained defendant's motion to dismiss as to each case. Appeals have been duly perfected.

There is no dispute as to the facts in these cases. On October 17, 1955, judgments for damages were rendered by the magistrate court of Jackson County in favor of plaintiff Joyce for $250 and in favor of plaintiff White for $950, in their respective cases filed against Oscar Rieger and growing out of the same automobile accident. It is conceded that at the time Oscar Rieger carried liability coverage with

defendant company, and that its attorney represented him before the magistrate court. On October 21, 1955, four days after the date of these judgments, Oscar Rieger died. On October 25, 1955, Melvin J. Spencer, as attorney for Oscar Rieger, and who was then and is now attorney for defendant company, filed "Notice of Appeal" and appeal bond in each case. On October 26, 1955, Oscar Rieger's widow, Alice M. Rieger, was appointed executrix of his estate and made first publication of her letters testamentary on November 2, 1955.

Thereafter and on December 15, 1955, plaintiffs filed in the Circuit Court of Jackson County their motions to dismiss these appeals from the magistrate court on the ground that same were filed four days after defendant's death and prior to the appointment of the executrix, and for the further reason that the executrix had not filed notices of appeal within the time provided by law for such appeals. On December 22, 1955, Rieger's erstwhile attorney Spencer and counsel for the executrix joined in filing motions to substitute the executrix as party defendant in the place and stead of Oscar Rieger. The circuit court denied both motions to dismiss the appeals and sustained the motions to substitute the executrix as party defendant.

Shortly thereafter this litigation reached the appellate courts for the first time. In State ex rel. White v. Terte, Mo.App., 293 S.W.2d 6, 12, this court granted a permanent writ of prohibition, holding that the circuit court " * * * should undertake no further exercise of jurisdiction * * * except to dismiss the appeals and to return the transcript to the Magistrate". In State ex rel. White v. Terte, Mo., 303 S.W. 2d 123, our Supreme Court reached the same conclusion. It might be well to note here that these facts determining the rights of the parties arose prior to January 1, 1956, the effective date of Missouri's new Probate Code.[1] While these appellate proceedings in prohibition were pending (the

Supreme Court decision was handed down June 10, 1957) no further action was taken in the magistrate court. No claim, demand, notice or proceeding of any kind was ever filed in the probate court, by either plaintiff, during the year following appointment of the executrix and soon thereafter the estate of Oscar Rieger was closed and the executrix finally discharged by the probate court of Jackson County.

We shall examine the two appellate decisions which are already in effect herein. We do so for two reasons: First, to complete the factual-legal picture and, Second, to assemble the legal guidance, reasoning and conclusions therein found. In the same category should be included the solid opinion of Bennick, C., St. Louis Court of Appeals in Newman v. Weinstein, 230 Mo.App. 794, 75 S.W.2d 871, which opinion received the avuncular blessing and approval of the Supreme Court in the instant prohibition opinion. Such examination discloses these conclusions: First. Proceedings in the circuit court on appeal from magistrate or justice courts are governed by special statutes. Second. The Circuit Court's jurisdiction on magistrate appeals is derivative and is measured by the jurisdiction theretofore possessed by the justice (magistrate). See Newman v. Weinstein, supra. Third. (a) Section 517.890, V.A.M.S. provides that if a defendant die after *final* judgment against him a transcript of the judgment shall be exhibited to the probate court; (b) Section 517.450 provides that in case a sole defendant against whom suit is pending in magistrate court dies, the magistrate shall immediately certify the case to the probate court; (c) The Supreme Court opinion specifically approved the Newman-Weinstein holding that the statute granting concurrent jurisdiction of the circuit court with that of the probate court in establishing claims against an estate had no application to cases appealed to that court from the justice court (now magistrate court).

1. V.A.M.S. §§ 472.010 to 475.480.

■ So, the over all result is that under all possible contingencies (if the magistrate's judgments were treated as final when entered or became final ten days thereafter since no valid appeal was taken or if the appeal be treated as valid), the circuit court was without jurisdiction and should return the cases to the magistrate court, and the magistrate court could proceed no further except either to certify the case to the probate court or exhibit a transcript of judgment to the probate court.

Section 482.100, V.A.M.S. provides that no magistrate shall have jurisdiction to hear or try any action *against* an executor or administrator. (Italics supplied). Section 464.020, V.A.M.S., the special statute of limitations or so-called no-claim statute in effect at the time of Rieger's death, provided in part: "All demands not thus exhibited in one year shall be forever barred, * * * and said one year shall begin to run from the date of the granting of the first letters on the estate where notice shall be published, the first insertion within ten days after letters are granted; * * .* ".

If the judgments entered in the magistrate court on October 17, 1955, were final judgments on that date, or became final when Rieger died four days later on October 21, 1955, and before expiration of the ten day appeal period, then, nevertheless, the same are unenforceable against Rieger because he is dead, and are legally unenforceable against his estate because barred under the non-claim statute since such judgments were not filed in the probate court during the one year limitation therein prescribed. If these judgment entries were not final, then plaintiffs' claims against Rieger were neither established against him or against his estate and are not enforceable.

Defendant's liability insurance policy which was in full force and effect contained, among others, the following provisions:

" 'No action shall lie against the company * * * until the amount of the Insured's obligation to pay shall have been finally determined either by judg-ment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

" 'Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy * * *' ".

■ Plaintiffs contend in the present actions that under these facts and under the above policy provisions defendant insurer is liable in a direct action brought against it for the amounts of these magistrate judgments even though such judgments are not enforceable against the insured or against his estate. Plaintiffs urge two theories which they say lead to such results: The first is that the actions of the executrix in moving to be substituted as party defendant and the orders of the circuit judge so substituting her constituted legal exhibition of plaintiffs' judgments as demands against Rieger's estate as required by Sections 507.100 and 464.040, RSMo 1949, and further constituted waiver of notice under Section 464.190, RSMo 1949. Section 507.100 is the general statutory provision for substitution of the proper party in case the original party dies. As pointed out hereinabove this section will not prevail over the special provisions governing proceedings in the magistrate courts. Section 464.190, which has since been repealed, merely provides that the executor may by appearing in court or by writing, waive the service of notice of demand. Plaintiffs' position under this theory is vulnerable from at least four aspects. First. Under Chapter 464, V.A.M.S., waiver of notice alone was insufficient to establish a claim against an estate inasmuch as Section 464.-040 required in addition that the demand be exhibited and presented to the probate court. Second. The order of the circuit court was ineffective in substituting the executor since on appeal it was determined by the Supreme Court that the circuit court

was wholly without jurisdiction. Third. The Supreme Court opinion in State ex rel. White v. Terte, supra, 303 S.W.2d at page 124 holds: "The proper forum in which to settle any claim based on the judgments in question against the deceased was the probate court". Fourth. The statutory requirements for establishment of claims against the estates of decedents are to be strictly construed for protection of heirs, creditors and other interested parties and its plain provisions cannot be waived by the deceased's administrator. In Jenkins v. Morrow, 131 Mo.App. 288, 109 S.W. 1051, loc.cit. 1053, Broaddus, P. J., speaking for this court, said: "In fact, they presented no demand. The claim that was allowed was called to the attention of the court by the administrator, and in a manner not authorized by the law of administration. It is for the claimant of a demand against an estate to present it for allowance, and no such duty is imposed upon the administrator. That he was acting outside of his power and duties there can be no question. We know of no way a probate court can obtain jurisdiction of a demand against an estate other than by its presentation with the statutory affidavit, and the failure to comply therewith is not a mere irregularity, but it is fatal to the judgment".

And in Harrison Machine Works v. Aufderheide, 222 Mo.App. 474, 280 S.W. 711, loc. cit. 712, this same court declared: "The nonclaim statute of limitation is rigidly enforced, and one is not entitled, either in law or equity, to file a claim after the expiration of the time fixed therein. Beekman v. Richardson, 150 Mo. 430, 51 S.W. 689; Bauer v. Gray, 18 Mo.App. 173. The decree in this case could not have gone against defendant on the theory of estoppel and waiver, because defendant as administratrix could not waive the statute, nor is she estopped to set it up. Hobson v. Hobson, supra [40 Colo. 332, 91 P. 929]; State ex rel. Scherber v. Probate Court, supra [145 Minn. 344, 177 N.W. 354, 11 A.L.R. 242]; Nagle v. Ball, 71 Miss. 330, 13 So. 929; Cockrell v. Seasongood, Miss., 33 So.

77; Spaulding v. Suss, 4 Mo.App. 541; 2 Woerner's The American Law of Administration (3 Ed.) § 402. The parties could not have dispensed with the filing of the claim by any ageement between them".

■ We hold that the executrix has not waived and could not waive these mandatory statutory provisions for establishment of claims against an estate.

■ Plaintiffs' second theory is that even though their claims were never established against Rieger's estate, still they hold valid final judgments against Oscar Rieger which, under the terms of the policy, set out hereinbefore, the defendant company is obligated to pay, and that their actions are properly brought against the defendant-insurer who is the "real party in interest", and that the executrix is not a necessary party any more than Rieger himself, if living, would be a necessary party if the insurer refused to pay a valid judgment extant against him. Under the terms of the policy, no action shall lie against the company "until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial", or by written settlement. If these magistrate judgments were final judgments, it seems likely plaintiffs could collect thereon in an action brought directly against defendant-insurer and without joining the insured or his legal representative. The policy seems to so provide and it was so held in Rutherford v. National Indemnity Company, 113 F.Supp. 640, 641, by the U. S. District Court, E. D. Missouri.

But do plaintiffs have final judgments here? As defendant states on page 32 of its brief: " * * * the question here involved is whether the judgments ever became final, conclusive determinations of the liability of the insured (or his executrix) * * *".

We have examined some authorities in order to interpret the phrase "finally determined by judgment against the insured"

as used in the policy. Black's Law Dictionary, Third Edition, 1944, page 779 gives us this definition of the phrase "final determination": "A determination of the rights of the parties to an action beyond appeal. Hanby v. First Nat. Bank (Tex. Civ.App.) 163 S.W. 415, 419". And from the same authority we quote from page 1025 on "Judgments": "A *final* judgment is one which puts an *end* to an action at law by declaring that the plaintiff either has or has not entitled himself to recover the remedy he sues for. (citing cases). So distinguished from *interlocutory* judgments, which merely establish the right of the plaintiff to recover, in general terms. Id. 397. A judgment which determines a particular cause. (citing cases). A judgment which cannot be appealed from, which is perfectly conclusive upon the matter adjudicated. (citing cases)."

In Quarture v. Allegheny County, 141 Pa. Super. 356, 362, 14 A.2d 575, 577, appellants had retained an attorney to "prosecute to final determination" their claim for damages in a condemnation proceeding. In that case the court was required to construe the phrase "final determination". We quote from its opinion:

"What is meant by the terms 'final determination' ? Bouvier's Law Dictionary, 1934 Volume at p. 414 refers 'final determination' to 'final disposition', and under the latter, the following definition is given: 'Final disposition.—Such a conclusive determination of the subject-matter embraced in a submission to arbitrators, that after the award is made nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon.' In Dean v. Marshall, 90 Hun 335, 35 N.Y.S. 724, the court held that the term 'final judgment' is synonymous with the expression 'final determination', and that the latter term's meaning is, 'the final settling of the rights of the parties to the action beyond all appeal'. Like-

wise in the case of Ex parte Russell, 13 Wall. 664, 669, 20 L.Ed. 632, in an opinion delivered by Mr. Justice Bradley, it was said: 'The final determination of a suit is the end of litigation therein. This cannot be said to have arrived as long as an appeal is pending. See also, Sinking Spring Water Co. v. Gring, 257 Pa. 340, 101 A. 732.

"The proceedings before the Board of Viewers cannot be considered as a 'final determination' as their award is subject to appeal by either the owner of the property or by the municipality".

In Lee's Summit Building & Loan Ass'n v. Cross, 345 Mo. 501, 134 S.W.2d 19, 22, our Supreme Court quoted with approval the following from Melenson v. Howell, 344 Mo. 1137, 130 S.W.2d 555, 557: " 'A motion for new trial is a common law motion to prevent judgment, so it is directed only to the verdict and not to any judgment. State ex rel. Conant v. Trimble, 311 Mo. 128, 277 S.W. 916, loc. cit. 920. Its primary purpose is to prevent the entry of a final judgment, on the verdict, which it would accomplish if sustained. The usual practice in this state is to immediately enter a judgment on a verdict. However, such a judgment remains interlocutory and does not become final until after the time for filing motions to prevent entry of judgment has expired (section 1005, R.S.1929, Mo.St.Ann. § 1005, p. 1272) without such motions being filed, or, if filed, until they are determined. Cox v. Frank L. Schaab Stove & Furniture Co., 332 Mo. 492, 58 S.W.2d 700; Stephens v. D. M. Oberman Mfg. Co., 334 Mo. 1078, 70 S.W.2d 899' ".

In Tucker v. State Automobile Mutual Ins. Co., 280 Ky. 212, 132 S.W.2d 935, 936, 125 A.L.R. 751, we find the following:

"The questions to be determined in this appeal are (a) was the insured's obligation to pay 'finally determined' within the meaning of the terms of the insurance policy, by the judgment of the Barren circuit court, * * *.

" * * * It is our view, that the term 'final judgment' or 'finally determined by judgment' means a judgment which shall have become final by expiration of time for appeal or by affirmance on appeal".

The Chief Justice of the Court of Appeals in this Kentucky case then incorporated in the opinion some conclusions reached by the appellate court of Illinois in Roberts v. Central Mutual Ins. Co., 285 Ill.App. 408, 2 N.E.2d 132:

" 'Plaintiff contends that the Legislature used the words "final judgment" in the sense that it was a judgment from which an appeal would lie. We cannot agree with that contention. To give it such a construction would make it possible for plaintiff to maintain an action for the recovery of the amount of a judgment which might later be set aside on appeal. The absurdity of such a construction is apparent. * * *.

" 'Final judgment,' as used in the statute and bond, meant a judgment in which the parties no longer had a right to have it changed by the court that entered it or to have it reviewed by appeal to a court of review' ".

The Newman-Weinstein case, supra, squarely holds that where a defendant in his lifetime appealed from a justice (magistrate) judgment to the circuit court and then died, the action abated because, (a) the circuit court jurisdiction being derivative is only coequal to that of the magistrate and (b) the magistrate has no jurisdiction to try cases against an administrator. We quote further verbatim from the en banc opinion in State ex rel. White v. Terte, 303 S.W.2d at page 125, supra: "Relators, (plaintiffs in this case) in response to respondent's motion to dismiss this proceeding, state that the judgments in the magistrate court were final ten days after the qualification of the executrix. The reason given was her failure to appeal from the judgments as provided by Section 512.260 RSMo 1949, V.A.M.S. If that be true, then relators should have complied with the provisions of Section 517.890, supra. On the other hand, if the appeals, for the sake of argument only, had been duly perfected, the death of the sole defendant against whom judgments had been entered, divested the circuit court of jurisdiction to proceed. See Section 517.450 RSMo 1949, V.A.M.S. That section prescribes what is to be done in a case of the death of a sole defendant against whom a suit is pending in a magistrate court. It provides that in such event, the magistrate shall immediately certify the case to the probate court for further proceeding".

This Supreme Court opinion does not specifically proclaim the result under a contention that since no valid appeal was taken, the magistrate judgments became final as of the date on which they were entered, or four days later when Rieger died. However, we cannot escape the conclusion that under our particular facts and under the authorities cited herein, these magistrate judgments were not final judgments as of the date entered nor did they become final four days later when Rieger died, so as to constitute "final determination by judgment against the insured" within the meaning of defendant company's policy. Responsive to plaintiffs' position taken before the Supreme Court that the judgment became final ten days after entry or ten days after the executrix was appointed that court held that it was then incumbent on plaintiffs to exhibit a transcript thereof to the probate court as required by Section 517.890, supra.

Moreover, to hold these magistrate judgments were final when entered or when Rieger died before expiration of the ten day appeal period and were enforceable even against defendant company would, under these facts, and under the action taken by these plaintiffs, deny the insured, or his estate, or the defendant-insurer the right of appeal from the judgments. The plaintiffs did not appeal and did not go into

probate court on these matters. The executrix could not effectively appeal from the magistrate judgments because that court is without jurisdiction to hear or try a suit against an executrix (Section 482.100, V.A. M.S.), and the jurisdiction of the circuit court on appeal from such magistrate court being derivative, it would be without jurisdiction. Furthermore, the executrix could not as a representative of her testator, take these matters into probate court. The defendant company likewise was powerless to secure a review or trial de novo by appeal to any forum.

For the reasons stated, we believe the trial court properly sustained the motions to dismiss and the judgment for defendant in each case is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the court. All concur.

On Motions for Rehearing

PER CURIAM.

The motions for rehearing and to transfer to the Supreme Court indicate some doubt as to our exact rulings in the principal opinion. So that there may be no misconception as to the holdings in the principal opinion we state briefly the following holdings:

First, when a sole defendant in a Justice or Magistrate Court case dies, the action is abated. Neuman v. Weinstein, 230 Mo. App. 794, 75 S.W.2d 871.

Second, if such death and abatement occur after judgment for plaintiff, but before the appeal period has expired, or if an effective appeal is taken, before same has been finally determined, such judgment is not a final adjudication or final determination or final judgment.

Third, under either of these circumstances, the case must go to the Probate Court for final adjudication, or else in a proper case a new action must be brought in the Circuit Court if that court has concurrent jurisdiction with the Probate Court.

Fourth, unless the procedure just outlined is followed, then under the no-claim statute, such claim or cause of action against the deceased defendant is lost in so far as the liability of such defendant and his estate is concerned.

Fifth, the insurance liability contract herein provided that the company (except as to settlements it made) would pay only those claims or judgments which had been finally determined or finally adjudicated against and were settled liabilities of the insured (or his estate).

To require the company to pay when neither the insured nor his estate could be required to pay, regardless of the estate assets, would, as held by this court in Stedem v. Jewish Memorial Hospital Ass'n of Kansas City, 239 Mo.App. 38, 187 S.W. 2d 469, 471, be rewriting, enlarging and extending the contract. Moreover, any other result under our particular facts would actually deny the defendant and anyone else for him, the right of appeal and review. Such a result would amount to neither reason nor justice.

The motion for rehearing and motion to transfer are denied.